| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| FOR THE EASTERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| ASSOCIATION OF IRRITATED RESIDENTS,<br><br>Plaintiff,<br><br>v.<br><br>OWENS-ILLINOIS, INC., et al.,<br><br>Defendants. | No. 1:19-cv-01707-DAD-JLT<br><br>ORDER APPROVING CONSENT DECREE<br><br>(Doc. No. 39) |

This matter is before the court on the parties' joint request to approve the consent decree, filed on June 14, 2021. (Doc. No. 39.) Having reviewed and considered the submissions of the parties, the court determines this matter is suitable for resolution without oral argument. *See* L.R. 230(g). For the reasons set forth below, the court will grant the parties' joint request and approve the consent decree.

This suit arises from a complaint for declaratory and injunctive relief and civil penalties pursuant to the citizen suit enforcement provision of the Federal Clean Air Act, 42 U.S.C. §§ 7401, *et seq.* ("Clean Air Act" or "CAA"). (Doc. No. 19.) Plaintiff Association of Irritated Residents ("AIR") is a California non-profit corporation. (*Id*. at ¶ 6.) Defendant Owens-Brockway Glass Container, Inc., is a Delaware corporation registered in California that owns and operates a glass manufacturing plant in Tracy, California. (*Id*. at ¶ 8.) Defendant Owens-Illinois,

Inc., was the parent corporation of defendant Owens-Brockway Glass Container, Inc. until it declared bankruptcy in January 2020. (*Id*. at ¶ 9.) Plaintiff alleges that defendant Owens-Illinois, Inc., is not responsible for the glass manufacturing operations conducted by defendant Owens-Brockway Glass Container, Inc. (*Id.*)

Prior to filing suit, plaintiff issued a sixty-day notice letter on August 27, 2019 to defendant and state and federal agencies to inform them of defendant's alleged violations of the CAA, the California State Implementation Plan, and the facility's permit under Title V of the CAA. (*Id.* at ¶ 1, 4.) Neither the EPA nor the State of California commenced an action within sixty days regarding the alleged violations, thus permitting plaintiff to file suit in this court. *See* 42 U.S.C. § 7604(b).[1] On December 6, 2019, plaintiff filed a complaint in this action, and then on June 9, 2020 (Doc. No. 1), plaintiff filed a first amended complaint alleging that defendant Owens-Brockway Glass Container, Inc. has bypassed the control equipment, exceeded the opacity emissions limits, and exceeded the carbon monoxide emissions limit at one or more of its glass melting furnaces in violation of defendant's Title V permit. (Doc. No. 19 at ¶¶ 26–49.)

On April 29, 2021, the parties filed a notice of settlement stating that they reached a proposed consent decree resolving the claims in this action. (Doc. No. 37.) On June 10, 2021, the United States Department of Justice, Environmental and Natural Resources Division ("United States") provided to counsel of record a letter stating that it reviewed the proposed consent decree in this action and does not object to its entry by the court. (*See* Doc. No. 39, Ex. B.) On June 14, 2021, the parties filed a request for entry of the proposed consent decree. (Doc. No. 39.)

As part of the proposed consent decree, defendant is required to select and retain an independent, qualified third-party expert or consultant to conduct a root-cause analysis. (*Id.* at ¶¶ 22–29.) Defendant is also required to bear all costs for retaining and compensating the expert in accordance with the proposed consent decree. (*Id.* at ¶ 33.) If that expert identifies any root

/////

---

[1] The Clean Air Act explicitly "allows any person to bring a lawsuit in federal court against any person who violates an 'emission standard or limitation.'" *Glob. Cmty. Monitor v. Mammoth Pac., L.P.*, No. 2:14-cv-01612-MCE, 2015 WL 2235815, at *1 (E.D. Cal. May 11, 2015) (citing 42 U.S.C. § 7604); *see also id.* at *1 n.1 (defining "emission standard or limitation").

cause or causes of the issues alleged in the complaint,[2] then the expert is to attempt to identify and recommend corrective actions that defendant Owens-Brockway Glass Container, Inc. may take to reduce or eliminate the occurrence of similar permit deviations in the future. (*Id.* at ¶ 24.) The expert is to prepare a report of the results of the root-cause analysis and any corrective actions recommended, if applicable within ninety days of the date that the expert is retained. (*Id.* at ¶¶ 25–36.) Within ninety days after the parties receive the report, defendant is required to determine the cost of implementing the corrective actions recommended, if any, and defendant then is to notify AIR of those costs and how those corrective actions along with any other corrective actions defendant has identified are to be implemented. (*Id.* at ¶ 29.) The proposed consent decree outlines the range of possible cost permutations and outlines how proposed actions are to be prioritized. (*Id.*) Defendant is required to complete the corrective actions within a commercially reasonable amount of time and thirty days after completion, defendant is to notify and submit to plaintiff a document evincing completion. (*Id.* at ¶ 32.)

Additionally, the proposed consent decree provides that defendant will make a payment of $30,000.00 to the Rose Foundation for Communities and the Environment, which will be used for projects aimed at reducing air pollution and the impact of air pollution in the San Joaquin Valley. (*Id.* at ¶ 34.) Defendant must pay $120,000.00 to plaintiff as a settlement of plaintiff's claims for investigation fees and costs, expert and consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing this lawsuit as well as negotiating a resolution. (*Id.* at ¶ 35.) Defendant must also pay a one-time total of $10,000.00 as a settlement for plaintiff's future claims for investigation fees and costs, expert and consultant fees and costs, reasonable attorneys' fees, and anticipated costs to be incurred for monitoring defendant's compliance with the proposed consent decree. (*Id.* at ¶ 35.)

"A consent decree is 'essentially a settlement agreement subject to continued judicial policing.'" *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (quoting *Williams v.*

---

[2] The consent degree specifies that these deviations include "all instances where AIR alleged that [defendant] bypassed the pollution control equipment, all opacity exceedances, and all exceedances of carbon monoxide at the Facility occurring on or after August 27, 2014." (Doc. No. 39 at 8.)

3

1 *Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). Thus, before approving a consent decree, a district court must independently determine that the proposed agreement is "fundamentally fair, adequate, and reasonable" and "conform[s] to applicable laws." *Id.*; *see also Arizona v. City of Tucson*, 761 F.3d 1005, 1010–14 (9th Cir. 2014). "[T]he district court must balance several factors, including but not limited to: strength of the plaintiffs' case; risk, expense, complexity and possible duration of continued litigation; relief offered in settlement; extent of discovery already completed; stage of proceedings; experience and views of counsel; governmental participation; and reaction of the class members." *Davis v. City & County of San Francisco*, 890 F.2d 1438, 1445 (9th Cir. 1989) (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). Where a government agency is involved in the negotiation of the proposed consent decree, there is a presumption in favor of the decree's enforceability, and courts should pay deference to the agency's judgment. *See S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984).

Here, the court concludes that this consent decree will provide substantial relief to the parties. The consent decree as proposed is the product of a fair arms-length negotiation process and is fair, reasonable, and adequate, and not illegal, collusive, or against the public interest. Though a government agency was not involved in the negotiation of the proposed consent decree, the United States' comments regarding and non-opposition to the parties' request for the court's approval further indicate that the proposed consent decree is an appropriate resolution of this case. *See Pa. Env't Def. Found. v. Bellefonte Borough*, 718 F. Supp. 431, 435 (M.D. Pa. 1989) (considering comments from the United States, a nonparty, in approving a consent decree in a citizen suit action brought under the Clean Water Act).

For these reasons:

1. The joint request for entry of the parties' consent decree (Doc. No. 39) is granted;

2. The parties' stipulation and proposed consent decree (Doc. No. 39) is approved;

/////
/////
/////
/////

3. The court retains continuing jurisdiction to enforce the consent decree in this action for the duration of the decree (*see* Doc. No. 39 at ¶¶ 11–13); and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **July 13, 2021**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE